IN THE UNITED STATES COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

| | | |
|---|---|---|
| ETHLOKIA PLUMBER, ex rel. K.W. | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | |
| | § | Civil Action No. 4:20-CV-00672 |
| | § | |
| HARRIS COUNTY DEPARTMENT | § | |
| OF EDUCATION | § | |
| Defendant. | § | |

## ORIGINAL COMPLAINT-AMENDED[1]

NOW COMES Ethlokia Plumber, natural mother of and on behalf of her son K.W., and files this their Original Complaint alleging that the Harris County Department of Education (hereinafter referred to as "HCDE" or the "School District") violated the various rights of K.W. as more specifically pled herein. Plaintiffs reserve the right to re-plead if new claims and issues arise upon further development of the facts as permitted by law. In support thereof, Plaintiffs would respectfully show this tribunal the following:

## I.   INTRODUCTION AND BRIEF REVIEW OF THE CASE

1.      At the time of the incident upon which this cause of action vests, K.W. was fourteen-year old student attending his first day of school at the Academic and Behavior Schools East (hereinafter "ABS East"), a non-disciplinary specialized day program within the Harris County Department of Education (hereinafter "HCDE"). K.W. is of African American heritage and is a student with a disability who qualifies for special education and related services pursuant to the

---

[1] The Original Complaint-Amended incorporates by reference the Original Complaint.

IDEA as a student with Specific Learning Disability in the areas of Math Calculation and Math Reasoning and as a student with an Other Health Impairment due to Attention Deficit Hyperactivity Disorder (severe).

2.        Even though state law and School Board policies and procedures give authority to school officials to use physical restraint in limited circumstances, K.W. was restrained unnecessarily and was injured due to staff's bad faith and gross misjudgment.  Due to the issues noted above and more fully described below, K.W. brings forth claims pursuant to the Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §794 ("Section 504"), and the Americans with Disabilities Act, 42 U.S.C. §12100 et seq. ("ADA"); the Fourth Amendment of the Constitution of the United States, as well as the Due Process Clause and Equal Protection Clause of the Fourteenth Amendment, all as contemplated by the Civil Rights Acts, 42 U.S.C. §1983.

## II.        PROCEDURAL RESUME

3.        As noted throughout this pleading, K.W. is a person with a disability.  At all times pertinent to this lawsuit, K.W. received special education services from HCDE ABS-East, as contemplated by the Individuals with Disabilities Act ("IDEA") 20 U.S.C. §1400 *et seq*.

4.        In regard to concerns leading up to the incident that is the basis of this cause of action, the incident itself and the HCDE ABS East failure to address any of the injuries sustained by K.W. at the hands of Herbert Allen, a Physical Education ("PE") coach at HCDE ABS East, his mother filed a complaint with the Texas Education Agency ("TEA") on his behalf, pursuant to 20 U.S.C. §1415(b)(6) and 19 Tex. Admin. Code §89.1165.  In Petitioner's Original Complaint and Request for Due Process Hearing ("Complaint"), filed on February 19, 2019, K.W. requested TEA appoint an Independent Hearing Officer ("IHO") to address violations under the IDEA and also claims pursuant to Section 504 and Title II of the ADA.

5.     On February 26, 2019, counsel for HCDE filed its first Motion to Dismiss it as a party to the due process complaint.  HCDE argued that HCDE did not directly receive federal funds under Part B of the IDEA and thus was not a local education agency (LEA) legally responsible to provide students, including K.W., a FAPE pursuant to the IDEA.  Thus, HCDE claimed that HCDE was not a LEA responsible for the provision of FAPE to students with disabilities attending its schools, including ABS East.  On March 8, 2018, both K.W. and counsel for Harmony Public Schools filed responses in opposition to the Motion to Dismiss.

6.      On March 18, 2019, the IHO issued her order dismissing all non-IDEA claims outside a hearing officer's jurisdiction and overruling HCDE's Motion to Dismiss without prejudice to subsequent resubmission and reconsideration.

7.     On April 12, 2019, K.W. and Harmony Public Schools participated in mediation and were able to reach an agreement.  HCDE refused to participate in mediation, claiming that it was not a proper party to the proceeding.

8.     At K.W.'s request, on May 16, 2019, Harmony Public Schools was dismissed as a party.

9.     On May 24, 2019, HCDE filed is Supplemental Motion to Dismiss asserting the same arguments previously asserted that it was not a local education agency subject to the requirements of the IDEA and addressing the IHO's legal issues that prevented dismissal the first time.  On June 6, 2019, the IHO agreed with HCDE that it was not a proper party pursuant to the IDEA and granted HCDE's Supplemental Motion to Dismiss.

### III.     JURISDICTION

10.     In this matter, his mother filed a due process complaint with the Texas Education Agency asserting violations of the IDEA against Harmony Public Schools and HCDE.    The case was styled [*K.] W. b/n/f Ethlokia P. v. Harmony Public Schools and Harris County Department of*

*Education*, TEA Dkt. 189-SE-0219.  HCDE filed a Motion to Dismiss on February 26, 2019 arguing it was not a proper party to the due process hearing under the IDEA because it was not a Local Education Agency responsible for the provision of a Free Appropriate Public Education to students eligible for services under the IDEA.   HCDE's Motion to Dismiss was denied on March 18, 2019.  On May 24, 2019, HCDE filed a Supplemental Motion to Dismiss again arguing it was not a proper party to the due process hearing under the IDEA.  HCDE also argued that although it contracts with numerous school districts and charter schools to provide educational services, it has no independent enrollment and does not directly receive federal funds under Part B of the IDEA. Thus, according to HCDE it is not a Local Education Agency subject to the requirements in Part B of the IDEA and is not responsible for the provision of a Free Appropriate Public Education under the IDEA to students eligible for services attending HCDE.  Further, HCDE argued any remaining non-IDEA claims were outside the purview of the IDEA and thus, outside the jurisdiction of a special education hearing officer.   On June 6, 2019, the independent hearing officer agreed with HCDE and issued Order No. 8 agreeing with HCDE that it was not a proper party subject to the requirements in the IDEA.  HCDE was dismissed as a party.  Thus, according to an independent hearing officer assigned by the Texas Education Agency in a due process hearing complaint brought under the IDEA, HCDE is not subject to the requirements in the IDEA. Therefore, K.W. has met the exhaustion requirements of 20 U.S.C. §1415(l).

11.     Jurisdiction is conferred upon the Court pursuant to 28 U.S.C.A. §1331 and §1343 because the matters in controversy arise under the Constitution, laws and rules of the United States as noted herein.

12.     Jurisdiction is also conferred upon the Court pursuant to 20 U.S.C. §1415(l) as K.W. has satisfied the exhaustion requirement for his non-IDEA claims, as contemplated by *Reyes v. Manor*

*Independent School District*, 850 F.3d 251, 256 (5th Cir. 2017) [finding when the Hearing Officers give a "finding and decision" on non-IDEA claims, as has occurred in this cause, exhaustion requirement is satisfied].  Section 1415(l) of 20 U.S.C. states:

> "Nothing in this title shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the Americans with Disabilities Act of 1990, [42 USC § 12101] title V of the Rehabilitation Act of 1973,  [29 USC §790] or other Federal laws protecting the rights of children with disabilities, except that before the filing of a civil action under such laws seeking relief that is also available under this part, the procedures under subsections (f) and (g) shall be exhausted to the same extent as would be required had the action been brought under this part."

13.     The IDEA's exhaustion requirement at 20 U.S.C. §1415(l) only applies when the substance of the claim is a denial of FAPE under the IDEA.  HCDE argued in the matter of [*K.] W. b/n/f Ethlokia P. v. Harmony Public Schools and Harris County Department of Education* (TEA Dkt. 189-SE-0219) that because it is not a Local Education Agency subject to the IDEA and does not directly receive Part B funds under the IDEA, it was not a proper party in the due process hearing nor was it subject to the FAPE requirements in the IDEA. The IHO agreed with HCDE and dismissed it as a proper party based on her finding that HCDE was not a Local Education Agency, as defined in the IDEA, and there was no relief available to K.W. under the IDEA from HCDE. Thus, because the IDEA's exhaustion requirement only applies when the substance of the complaint is a denial of FAPE, the two-step analysis set out by the Supreme Court in *Fry v. Napoleon Community Schools* is not applicable in this matter.  *Fry v. Napoleon Community Schools,* 137 S. Ct. 743 (2017).[2]  Therefore, because HCDE is not subject to the legal requirements

---

[2] In *Fry v. Napoleon Community Schools*, the Supreme Court identified two questions for consideration in assessing a complaint's connection to FAPE and whether exhaustion is necessary as follows:  (1) Could the student assert the same claim against a noneducational public facility; and (2) Could an individual other than a student assert the same claim against the district?  If the answer to both questions is yes, it is unlikely that the complaint relates to the provision of FAPE

set out in the IDEA, K.W. has met the exhaustion requirements set out in 20 U.S.C. §1415(l) and his claim is subject to the analysis in Section 504 and the ADA.

14.     Based on the above, pursuant to 28 U.S.C.A. §§1331 and 1343, jurisdiction is proper.

## IV.     VENUE

15.     Venue is proper before this Court under 28 U.S.C. §1391 because the events and omissions giving rise to Plaintiff K.W.'s claims occurred in the Southern District of Texas, Houston Division.

## V.     PARTIES

16.     As noted above, K.W. is a male of African-American heritage and is a student with a disability who qualifies for special education and related services pursuant to the IDEA as a student with Specific Learning Disability in the areas of Math Calculation and Math Reasoning and as a student with an Other Health Impairment due to Attention Deficit Hyperactivity Disorder (severe). K.W. also meets the definition of an individual with a disability under Section 504. 42 U.S.C. § 12102 and 29 U.S.C. § 705(20). K.W. has a physical or mental impairment that substantially limits one or more major life activities and a record of such impairment. 42 U.S.C. §12102(1). Section 12102(2) defines "Major Life Activities" to "include, but not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." Based on his eligibility as a student with Specific Learning Disabilities in the areas of Math Calculation and Math Reasoning and as a student with an Other Health Impairment due to Attention Deficit Hyperactivity Disorder (severe), K.W. has a disability that at a minimum substantially limits learning, concentrating, and thinking. K.W. has always been small and slight

---

and the party could go directly to court with his case. Further, the courts should consider whether parents attempted to seek relief through the IDEA's administrative procedures before seeking a judicial remedy. *Fry v. Napoleon Cmty. Sch.*, 137 S. Ct. 743, 756 (2017).

in stature. Thus, K.W. qualifies as a person with a disability under the Rehabilitation Act of 1973 and the Americans with Disabilities Act of 1990 (as amended).

17.     During the time of the incident, K.W. and his mother lived at 3739 Curvey Ln., Houston, TX. 77047. Although K.W. was originally enrolled at Harmony Public Schools for the 2018-2019 school year, Harmony Public Schools contracted with HCDE to provide K.W. an education.

18.     HCDE is a duly incorporated independent "county school district," located in Houston, Harris County, Texas, organized under the laws of the State of Texas. HCDE is the only remaining county school district in Texas and operates pursuant to Section 11.301 of the Texas Education Code. It is a public entity, an agency of the government of Harris County and levies taxes on all real and business personal property located in Harris County, Texas. HCDE receives federal and state funding and also depends on funds generated from a local property tax rate. HCDE generates funding through federal and state grants and by charging fees for services it provides to neighboring school districts. HCDE exists under law to "equalize educational opportunity" in Harris County. HCDE ABS East is one of four schools in HCDE that serves students aged 5 to 22 years old with intellectual, developmental and behavioral disorders, autism spectrum disorder and other significant health impairments. Area school districts, such as Harmony Public Schools, contract with HCDE to provide student services at one of the two Academic and Behavior Schools.

19.     HCDE meets the definition of a program or activity under Section 504 under 29 U.S.C. § 794(b). "Program or activity" is defined in 29 U.S.C. §794(b)(1) as follows: "…the term 'program or activity' means all of the operations of - (A) a department, agency, special purpose district, other instrumentality of a State or of a local government; or (B) the entity of such State or local government that distributes such assistance and each such department or agency (and each other

State or local government entity) to which the assistance is extended, in the case of assistance to a State or local government… any part of which is extended Federal financial assistance." [3]

20.    HCDE can be served through its Superintendent James Colbert Jr., HCDE Administration, 6300 Irvington Boulevard, Houston, TX. 77022. The Harris County Department of Education is a governmental agency of Harris County.  It can be found at 6300 Irvington Blvd., Houston, TX 77022.

21.    At all pertinent times to this case, K.W. was a student attending school at HCDE ABS East.

## VI.    <u>STATEMENT OF FACTS</u>

A.    STATE, FEDERAL AND HCDE POLICIES AND PROCEDURES

22.    Pursuant to Tex. Educ. Code § 37.0021, it is the policy of the State of Texas "to treat with dignity and respect all students, including students with disabilities under Subchapter A, Chapter 29."

23.    Accordingly, "[a]ny behavior management technique and/or discipline management practice must be implemented in such a way as to protect the health and safety of the student and others.  No discipline management practice may be calculated to inflict injury, cause harm, demean, or deprive the student of basic human necessities."  19 Tex. Admin. Code § 89.1053(j).

24.    State law defines "restraint" as "the use of physical force or a mechanical device to significantly restrict the free movement of all or a portion of a student's body."  Tex. Educ. Code § 37.0021(b)(1); 19 Tex. Admin. Code § 89.1053(b)(2).

---

[3] In the alternative, the definition of "program or activity" in 29 U.S.C. §794(b)(2)(B) includes "a local education agency (as defined in section 7801 of Title 20), system of career and technical education, or other school system…any part of which is extended Federal financial assistance." Under this definition, HCDE qualifies as an other school system.

25.     According to 19 Tex. Admin. Code § 89.1053(c), a school employee, volunteer, or independent contractor may use restraint only in an emergency as defined in subsection (b) of this section and with the following limitations:

(1)  Restraint must be limited to the use of such reasonable force as is necessary to address the emergency.

(2)   Restraint must be discontinued at the point at which the emergency no longer exists.

(3)  Restraint must be implemented in such a way as to protect the health and safety of the student and others.

(4) Restraint must not deprive the student of basic human necessities.

26.     "Emergency" is defined as a situation in which a student's behavior poses a threat of:

(A) imminent, serious physical harm to the student or others; or

(B) imminent, serious property destruction.
19 Tex. Admin. Code § 89.1053(b)(1).

27.     The Office for Civil Rights (OCR) explained that the restraint and seclusion of a student with a disability could violate Section 504 if it: 1) constitutes unnecessary different treatment; 2) is based on a policy, practice, procedure, or criterion that has a discriminatory effect on students with disabilities; or 3) denies a student FAPE.  *See Dear Colleague Letter: Restraint and Seclusion of Students with Disabilities*, 69 IDELR 80 (OCR 2016).  The use of restraint may deny a student FAPE under Section 504 if the use of the techniques traumatizes the student.  *Id*.

28.     In the Department of Education's *Restraint and Seclusion: Resource Document* (EDU 2012), the use of "restraint or seclusion should never be used except in situations where a child's behavior poses imminent danger of serious physical harm to self or others, and restraint and seclusion should be avoided to the greatest extent possible without endangering the safety of students and staff."  While the Resource Document is not legally binding on a school district, the OCR has referred to the document in numerous letters of findings and resolution agreements.

29.     HCDE outlines their policies and philosophy regarding accepted behavior management strategies and techniques toward students.  According to the HCDE Parent/Student Handbook and Student Code of Conduct, the philosophy of Academic and Behavior Schools (ABS) is to

> provide an educational environment for those students identified as having severe behavioral difficulties, emotional difficulties, and/or developmental disability.  The classes are specifically designed to assist special education students to function successfully.  Staff members at the Academic and Behavior Schools use data driven behavior management techniques emphasizing positive reinforcement.  The philosophy of the ABS program revolves around the premise that significant learning and behavioral changes may be achieved with the following:
>
> - Appropriate educational tasks;
> - Reinforcement that is meaningful to the student; and
> - Student knowledge of socially acceptable, responsible behaviors. [4]

30.     According to HCDE, the GOALS of ACADEMIC AND BEHAVIOR SCHOOLS are as follows:

> 1.  To teach students to control their behaviors and handle life situations appropriately.
>
> 2.  To enable students to return to a less restrictive environment as quickly as possible.
>
> 3.  To plan and execute educational programming that provides students with academic and vocational skills necessary to experience a productive future.  *Id.*

31.     The Appendix included in the Parent/Student Handbook includes HCDE policies. According to the Behavior Management Techniques Section in Policy FOF (Legal) listed in the Appendix:

> Any behavior management technique and/or discipline management practice must be implemented in such a way as to protect the health and safety of the student and others.  No discipline management practice may be calculated to inflict injury, cause harm, demean, or deprive the student of basic human necessities.  *Education Code 37.0021(a); 19 TAC 89.1053(j).*  See Policy FOF (Legal).

---

[4] See HCDE-texas.org/media/uploads/2019/10/StudentParent-Handbook-2019-2020-Final-copy.pdf, p. 1.

32.     According to the HCDE Student /Parent Handbook, physical restraint is "a serious action" and used **as a last resort**.   (Emphasis in original.)  There are limited situations when a student can be restrained.  "A student is restrained when he/she is endangering him/herself, staff members, other students or property."   "The staff employs a non-harmful control and restraint system designed to defuse and ensure the safety and welfare of challenging, disruptive behavior before it escalates to a crisis situation.  The purpose of the method used is to assist student to:

- learn to live and thrive in a safe and respectful environment;
- interact with positive role models who are equipped to manage difficult situations;
- learn new coping skills;
- receive guidance about making positive behavior choices in the future; and
- feel supported by staff who are emphatic, compassionate and respectful.

33.     Further, in the Student Discipline (FOF) Legal, the "Use of Force to Maintain Discipline" section states, "The use of force, but not deadly force, against a student is justified if the teacher or administrator is entrusted with the case, supervision, or administration of the student when, and to the degree the teacher or administrator reasonably believes the force is necessary, to further the purpose of education or to maintain discipline in a group.  Penal Code 9.62."

34.     Included in the Glossary of the Parent/Student Handbook is the definition of "Assault." "Assault is defined in part by the [Texas] Penal Code §22.01(a)(1) as intentionally, knowingly, or recklessly causing bodily injury to another; §22.01(a)(2) as intentionally or knowingly threatening another with imminent bodily injury; and §22.01(a)(3) as intentionally or knowingly causing physical contact with another that can reasonably be regarded as offensive or provocative."

35.     Title 5 felonies are those crimes listed in the Title 5 of the Texas Penal Code that typically involve injury to a person and includes injury to a child, an elderly person, or a disabled person of any age under Section 22.04.

36.     All staff members at HCDE campuses receive annual training in physical restraint techniques.  Thus, the restraint of student should only be used in limited situations and for a limited purpose.

37.     In summary, HCDE policies and procedures set out the parameters of the use of discipline with students.  While the established practices and policies do not condone the use of force by a teacher unless the use is to further the purpose of education or to maintain discipline in a group, the use of force sufficient to break K.W.'s collarbone was a gross misjudgment and outside the realm of practices endorsed by HCDE.

B.      ABOUT K.W.

36.     K.W. is now sixteen years old.  He currently attends Worthing High School in Houston Independent School District.  Although he has enough course credits to be considered a junior, he is classified as a sophomore.

37.     K.W. qualifies for special education and related services under the IDEA as a student with a Specific Learning Disability in the areas of Math Calculation and Math Reasoning and as a student with an Other Health Impairment due to Attention Deficit Hyperactivity Disorder (severe).  He has also been diagnosed with a Mood Disorder (severe).

38.     He just recently was re-evaluated for special education services and, in addition to his previous eligibilities, he is now eligible for special education services as a student with an Emotional Disturbance.  He is also displaying characteristics of a person with Post Traumatic Stress Syndrome (PTSD).

39.     At the time of the incident, K.W. was a fourteen-year old ninth grader.  He began the ninth grade during the 2018-2019 school year at Harmony School of Ingenuity, a charter school in the Houston area.  He had attended school at Harmony School of Ingenuity since his eighth-grade

school year. On February 20, 2019, an Admission, Review and Dismissal ("ARD") committee convened at Harmony Public Schools – Ingenuity to discuss K.W.'s educational programming for the upcoming 2019-2020 school year. The ARD committee determined K.W. needed a more restrictive placement than Harmony - Ingenuity could provide and placed him at HCDE ABS-East, HCDE's non-disciplinary specialized day program. This was his first time to be placed by his ARD Committee at HCDE ABS East.

40.    K.W.'s first day of attendance at HCDE-ABS East was on February 26, 2018, the date the PE coach assaulted him.[5]

41.    For all purposes of this lawsuit, he is considered a person with a disability.

C.    THE INCIDENT

42.    On February 26, 2019, his first day at HCDE ABS East, K.W. was in the gym with other students. While he was standing in the gym during his PE class, he was assaulted by Herbert Allen the Physical Education (PE) coach. According to the Written Summary of Non-Violent Physical Crisis Intervention (NPCI) Use, the incident began at 1:48 PM and ended at 1:51 PM. School staff notified K.W.'s mother at 2:31 p.m. and informed her that due to K.W.'s behavior a staff member had used a CPI Team Control Position (Emergency Floor Procedure) physical restraint on K.W. His mother immediately went to the school and met with the principal and assistant principal. K.W.'s aunt met her there. The principal Mindy Robertson, the school principal, and George Sanders, the assistant principal, informed them that K.W. had been cursing and verbally threatening the Physical Education coach in the gym. K.W.'s mother and aunt were told that the

---

[5] Local school districts enter into a formal contract with HCDE when a student is placed there by an ARD committee. There was a contract for K.W. to attend HCDE-ABS East from February 21, 2018 to June 6, 2018 that was executed on April 2, 2018.

PE coach used a CPI Team Control Position (Emergency Floor Procedure), a type of physical restraint, on K.W. while he was in the gym.

43.     K.W.'s mother was told that K.W. had been non-compliant to verbal directives to discontinue inappropriate language and had "balled up his fist and his disposition appeared in a threatening manner." The PE coach claimed that due to the imminent threat of possible person harm, he felt he was in imminent threat from K.W., and he performed a CPI Team Control Position (Emergency Floor Procedure) on K.W.

44.     The nurse reported that after the restraint she had examined K.W. because he complained of pain to his left shoulder. She gave him with an ice pack and provided his mother with a medical referral.

45.     His mother and aunt requested to view the video of the incident. His aunt was not allowed to view the video but his mother, along with the principal, saw it. The principal told K.W.'s mother she had already viewed the video and pointed out certain things in the video. His mother was concerned that the video had already been edited.

46.     Although the video was fuzzy, it was clear that not all the students had been removed from the gym, as claimed in the Written Summary of Non-Violent Physical Crisis Intervention (NPCI) Use. While the Written Summary claimed that the PE coach and K.W. were interacting verbally and K.W. become verbally and physically non-complaint, the video told a different story. The video showed the PE coach was on the other side of the gym and ran over to K.W. to restrain him. Although the Written Summary only mentioned one restraint, the video showed that the PE coach restrained K.W. twice. The first time K.W. was restrained by the PE Coach, K.W.'s head hit a nearby table and was slammed to the floor. The second restraint showed the PE Coach taking

K.W. down to the floor but this time another staff member placed a mat under K.W.'s head before it hit the floor. The mat was not present the first time the PE Coach restrained K.W.

47.     Also, contrary to the Written Summary, the video showed that K.W. had not "balled up his fist" as reported by the PE Coach nor did K.W.'s disposition appear to be a threatening manner toward the PE Coach.  The PE Coach was on the other side of the gym from where K.W. was talking to other students.  The video showed the PE coach charge at K.W. from across the gym and assaulted him, taking K.W. to the floor. As the coach was assaulting him, K.W. hit his head on a nearby table and then on the gym floor.

48.     The video clearly showed K.W. was neither a threat to himself nor to others, especially not toward the PE Coach.

49.     Because K.W. was complaining of pain to his shoulder, when they left the school, his mother took him to an Emergency Room. The doctor who examined K.W. diagnosed him with an acute left clavicle fracture with fragment displacement.  The doctor recommended K.W. be seen by a pediatric orthopedic specialist for further management.  Because the Emergency Room doctor considered the injury to K.W. an assault of a minor, the assault was reported to the Houston Police Department.

50.     A report regarding the assault was also made to Child Protective Services (CPS) that same day.  The Notice of Findings of CPS Investigation, dated August 22, 2018, found "Reason to Believe" physical abuse occurred.  The alleged perpetrator was the PE Coach, Herbert Allen.  CPS defined "Reason to Believe" as "a preponderance of the evidence supports that the alleged abuse or neglect did occur."

51.     The PE coach was fired from HCDE soon after the "restraint" incident.  K.W.'s mother was told the coach was fired because of the restraint of K.W.  As on April 19, 2019, the PE coach's

teaching certificate was under review by the TEA Educator Investigations Division. As of today, the PE coach's teaching certificate was not revoked.

D.    THE EFFECT OF THE INCIDENT ON K.W.

52.    Once they left HCDE ABS East, because K.W. was complaining of pain, K.W.'s mother took him to an Emergency Room. K.W. received treatment at the Emergency Room the day of the incident. He had to wear a sling for many months. Since then he has suffered headaches and has been seen by a neurologist and a brain trauma specialist. To this day, K.W. has an emotional reaction to touch or close contact. Sometimes the reaction can be aggressive. His doctor has diagnosed him with Post Traumatic Stress Syndrome (PTSD).

53.    Because of the injury, K.W. was not able to attend school the rest of the 2018-2019 school year. He was placed on homebound services from March 23, 2018 until the end of the school year. According to the ARD meeting held to initiate homebound services, K.W. received only 4 hours of instruction a week. He lost educational opportunity and his ability to earn course credit was in jeopardy. K.W. had to attend summer school to make up some of the lost course credit.

54.    Even now, K.W. is affected by the injuries he received that day. He suffers from migraines on a weekly basis. Prior to that day, he never suffered migraines. He has had seizures. Prior to that day, he never had a seizure. He continues to see a neurologist. His collarbone, while healed, continues to cause him pain. More importantly, K.W. was recently re-evaluated for special education services by Houston ISD and found eligible for services as a student with an emotional disturbance. He had previously been evaluated to determine whether he met eligibility for services as a student with an emotional disturbance but had never qualified under that eligibility. His mother notes K.W. exhibits symptoms of Post-Traumatic Stress Disorder since the assault. K.W.

has difficulty interacting with people and becomes very defensive when people come into close contact with him or touch him. His mother never saw these issues prior to the assault.

E.     HCDE HAS FAILED TO REMEDY THE EFFECTS OF THE INJURY

55.     HCDE failed to remedy the effects of the injuries K.W. sustained, whether such remedies are otherwise required pursuant to caselaw, evolving jurisprudence, executive agency directives whether from federal or state entities or HCDE's own policies and procedures.

## VIII. STATE ACTION

56.     Plaintiffs incorporate by reference all the above-related paragraphs, as well as those below, with the same force and effect as if herein set forth.

57.     The HCDE, in an Official and Individual Capacities and in all matters, were acting under color of state law when K.W. was subjected to the wrongs and injuries set forth herein.

## IX.     UNCONSTITUTIONAL POLICIES, PROCEDURES, PRACTICES & CUSTOMS

58.     Plaintiffs incorporate by reference all the above paragraphs, as well as those below, with the same force and effect as if herein set forth.

Plaintiffs contend that the failure of HCDE to have policies, procedures, practices, and customs in place to protect K.W. from professional staff violated his rights pursuant to the Fourteenth Amendment of the Constitution of the United States for with Plaintiffs seek recovery pursuant to 42 U.S.C. § 1983.

59.     To state a claim for discrimination under Title II and §504, Petitioner must show that the student (1) is disabled; (2) are otherwise qualified to participate in the regular class; and (3) were excluded from the regular class because of their disability.

## X. VIOLATIONS OF THE FOURTH AMENDMENT TO THE U.S. CONSTITUTION

60. Plaintiffs incorporate by reference all the above related paragraphs, as well as those below, with the same force and effect as if herein set forth.

61. At all times pertinent hereto, Defendant HCDE PE Coach was acting in his capacity as an employee for the Defendant HCDE, and therefore acting under the color of the law.

62. HCDE's actions and omissions which caused K.W.'s Constitutional deprivations are thus enforceable pursuant to 42 U.S.C § 1983.

63. The restraint of K.W. by Defendant HCDE's employee was unreasonable.

64. The restraint of K.W. by Defendant HCDE's employee was unnecessary.

65. The restraint of K.W. by Defendant HCDE's employee was excessive.

66. The restraint of K.W. by Defendant HCDE's employee was unreasonable and was not justified at its inception and not reasonable in scope.

67. As such, all these acts by Defendant HCDE's employee violated K.W.'s rights pursuant to the Fourth Amendment of the Constitution of the United States for which Plaintiffs seek recovery pursuant to 42 U.S.C. § 1983.

## XI. CLAIMS RELATED TO THE REHABILITATION ACT OF 1973

68. Plaintiffs incorporate by reference all the above-related paragraphs with the same force and effect as if herein set forth.

69. HCDE receives federal funds and thus follows the requisites of Section 504 of the Rehabilitation Act of 1973, 20 U.S. C. § 794.

70. The implemented regulations of Section 504 require that each state that receives disbursements, including the state's political subdivisions such as a county school district, must

ensure all students with disabilities are given appropriate and necessary accommodations, pursuant to federal law and rules. To the degree that a policy or practice hinders honest consideration of a disabled student's needs and fails to accommodate that child's disability and keep the student safe, it violates Section 504.

71.     To state a claim for discrimination under Title II and §504, Petitioner must show that the student (1) is disabled; (2) are otherwise qualified to participate in the regular class; and (3) were excluded from the regular class because of their disability.

72.     The Fifth Circuit has long held that:

> "[A] cause of action is stated under § 504 when it is alleged that a school district has *refused* to provide reasonable accommodations for the handicapped plaintiff to receive the full benefits of the school program."

> *Marvin H. v. Austin Indep. Sch. Dist.*, 714 F.2d 1348, 1356 (5th Cir. 1983) (emphasis in original.)

73.      The Court's use of the word "refused" indicates the statute requires intentional discrimination against a student based on his disability. *Marvin H.*, 714 F.2d at 1357. *Marvin H.* is consistent with courts that have held to establish a claim for disability discrimination.

74.     In addition, and separate and apart from his ADA cause of action noted below, K.W. alleges that HCDE failed to keep K.W. safe from harm, solely because of his disability.

75.     Plaintiffs assert that because HCDE failed to provide K.W. a safe and non-hostile educational environment, such failures as noted above, have together and separately, contribute to violating K.W.'s rights pursuant to Section 504 and the federal rules and regulations promulgated thereto.

76.     As such, K.W. has a private cause of action for violation of the regulations promulgated under Section 504 due to the acts and omissions by HCDE.

77.     In addition, and in the alternative, the failures denoted herein by HCDE were a gross deviation from professional standards of care.

78.     In addition, and in the alternative, K.W. was a victim of intentional discrimination by HCDE.

79.     In addition, and in the alternative, K.W. was a victim of disparate impact under Section 504 due to the acts and omissions of HCDE.

80.     The acts and omissions of HCDE specifically undermined and interfered with K.W.'s rights pursuant to Section 504, and he was a victim of discrimination based upon his disability.

## XII.     CLAIMS PURSUANT TO THE EQUAL PROTECTION CLAUSE
## OF THE FOURTEENTH AMENDMENT

81.     Plaintiffs incorporate by reference all the above related paragraphs, as well as those below, with the same force and effect as if herein set forth.

82.     The restraint of K.W. by Defendant HCDE's employee was a substantial departure from professional practice or standards.

83.     The restraint of K.W. by Defendant HCDE's employee was arbitrary.

84.     The restraint of K.W. by Defendant HCDE's employee was conscience shocking.

85.     The restraint of K.W. by Defendant HCDE's employee's "use of force applied caused injury so severe, was so disproportionate to the need presented, and was inspired by malice or sadism, rather than by merely careless or unwise excess of zeal, that it amounted to a brutal and inhumane abuse of official power literally shocking to the conscience." *Hall v. Tawney*, 621 F.3d 607, 613 (4th Cir. 1980).

86.     The acts and omissions of Defendant HCDE discriminated against K.W. when treating him in a disparate manner as compared to other students similarly situation, thereby violating his rights

pursuant to the Equal Protection Claus of the Fourteenth Amendment, for which K.W. seeks recovery pursuant to 42 U.S.C. §§ 1983 and 1988.

### XIII.   CLAIMS RELATED TO THE AMERICANS WITH DISABILITIES ACT

87.    Plaintiffs incorporate by reference all the above-related paragraphs with the same force and effect as if herein set forth.

88.    In addition, and in the alternative to the above, the facts as previously described demonstrated violations of Title II of the *Americans with Disabilities Act*, 42 U.S.C. § 12131, *et seq.*

89.    K.W. is a "qualified individual with a disability" as defined in 42 U.S.C § 12131(2).

90.    HCDE is a "public entity" as defined in 42 U.S.C. § 12131(1) and receives federal financial assistance so as to be covered by the mandate of the ADA.

91.    HCDE and its schools are facilities and their operation constitute a program and services for ADA purposes.

92.    Specifically, and separate and apart from his Section 504 cause of action, K.W. alleges that HCDE restrained him in a manner that they would not have otherwise done to a non-disabled student.

93.    K.W. was a victim of discrimination based upon his disability by the acts and omissions of HCDE.

94.    K.W. has a private cause of action against HCDE for their failure to follow relevant regulations promulgated pursuant to the ADA.

95.    Such failures caused injuries to K.W.

## XIV.  **RATIFICATION**

96.     Plaintiffs incorporate by reference all the above-related paragraphs, as well as those below, with the same force and effect as if herein set forth.

97.     HCDE ratified the acts, omissions of Herbert Allen Jr., PE Coach.

98.     As a result, HCDE is responsible for the acts and omissions of staff who were otherwise responsible for the safety and well-being of K.W.

## XV.  **PROXIMATE CAUSE**

99.     Plaintiffs incorporate by reference all the above related paragraphs, as well as those below, with the same force and effect as if herein set forth.

100.    All of the foregoing acts and omissions of HCDE, both separately and/or collectively, jointly and severally, whether in any official or individual capacity, constitute a direct and proximate cause of the injuries and damages set forth herein.

## XVI.  **SPOLIATION**

101.    Plaintiffs hereby require and demand that HCDE preserve and maintain all evidence pertaining to any claim or defense related to the assault or other violations made the basis of this Complaint and requires for due process or the damages resulting therefrom, including statements, photographs, videotapes, audiotapes, surveillance, security tapes, business or medical records, incident reports, telephone records, emails, text messages, electronic data/information, and any other evidence regarding the incident or other violations set forth herein.

102.    Failure to maintain such items will constitute "spoliation" of evidence, which will necessitate use of the spoliation inference rule – an inference or presumption that any negligent or intentional destruction of evidence was done because the evidence was unfavorable to the spoliator's case.

103.     As set forth in more detail herein above, HCDE has been on notice of its duty to preserve the video recording of this incident.

## XVII.  DAMAGES

104.     Plaintiffs incorporate by reference all the above related paragraphs, as well as those below, with the same force and effect as if herein set forth.

105.     As a direct and proximate result of HCDE's conduct, K.W. suffered injuries and damages, for which he is entitled to recover herein including but not limited to:

a.  Loss of educational opportunities to the same extent as a non-disabled student;

b.  Physical pain in the past;

c.  Physical pain in the future;

d.  Medical expenses in the past;

e.  Medical expenses in the future;

f.  Mental anguish in the past;

g.  Mental anguish in the future;

h.  Mental health expenses in the past;

i.  Mental health expenses in the future;

j.  Physical impairment in the past;

k.  Physical impairment in the future;

l.  Loss of earning capabilities; and

m.  Various out-of-pocket expenses incurred by his family but for the acts and omissions of HCDE.

## XVIII.  PUNITIVE DAMAGES

106.     Plaintiffs incorporate by reference all of the above-related paragraphs, as well as those below, with the same force and effect as if herein set forth.

107.     Plaintiffs reasonably believe the facts and omissions of Defendant HCDE satisfy criteria for violation of civil rights and discrimination because the facts shock the conscience, thus satisfying criteria for punitive damages, as contemplated by Section 1983.

## XIX.   ATTORNEY FEES

108.     Plaintiffs incorporate by reference all of the above-related paragraphs, as if fully set forth herein.

109.     It was necessary for Plaintiffs to retain the undersigned attorney to file this lawsuit.  Upon judgment, Plaintiffs are entitled to an award of attorney fees and costs pursuant to 42 U.S.C. §§ 1983, 1988(b), and 42 U.S.C. § 2000 *et seq*.

## XX.   DEMAND FOR JURY TRIAL

110.     Pursuant to Federal Rules of Civil Procedure 38(b), Plaintiffs demand a jury trial for all issues in the matter.

## XXI.   PRAYER

Plaintiffs pray for judgment against HCDE in the manner and particulars noted above and in an amount sufficient to fully compensate them for the elements of damages enumerated above, judgment for damages, recovery of attorneys' fees and costs for the preparation and trial of this cause of action, and for its appeal if required, Section 504, the ADA, 42 U.S.C. § 1983 and 1988 and 42 U.S.C. § 2000d et seq.; together with pre- and post-judgment interest, and court costs expended herein, as well as the equitable issues noted above; and, for such other relief as this Court deems just and proper in law and equity.

Respectfully submitted,

*/s/ Yvonnilda G. Muñiz*
Yvonnilda G. Muñiz

State Bar No. 24007717
Southern Dist. No. 1014837
Law Office of Yvonnilda Muñiz, P.C.
P.O. Box 92018
Austin, TX. 78709
Tel. (512) 288-4279
Fax (888) 398-8808
Email: ygmuniz@outlook.com

ATTORNEY-IN-CHARGE

ATTORNEY FOR PLAINTIFFS