**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **ETHLOKIA PLUMBER,** | § | |
| **ex rel. K.W.,** | § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | **C.A. No. 4:20-cv-00672** |
| | § | |
| **HARRIS COUNTY DEPARTMENT** | § | |
| **OF EDUCATION,** | § | |
| **Defendant.** | § | |

<u>**DEFENDANT HARRIS COUNTY DEPARTMENT OF EDUCATION'S
MOTION FOR SUMMARY JUDGMENT**</u>

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

Defendant Houston County Department of Education (hereafter "HCDE" or "Defendant") moves for summary judgment in accordance with FED. R. CIV. P. 56 on all pending claims made by Plaintiffs Ethlokia Plumber, ex rel. K.W. (collectively, "Plaintiffs"), and submits this brief in support.

# TABLE OF CONTENTS

TABLE OF CONTENTS............................................................................................. i

TABLE OF AUTHORITIES ................................................................................... ii

NATURE OF THE CASE AND STAGE OF PROCEEDINGS ...................................1

STATEMENT OF THE ISSUES AND STANDARD OF REVIEW ...........................2

SUMMARY OF ARGUMENT ...................................................................................3

FACTUAL BACKGROUND.......................................................................................4

ARGUMENTS & AUTHORITIES .............................................................................8

    A. HCDE has sovereign immunity for the alleged tort claim....................................8

    B.  Plaintiffs' claims under the U.S. Constitution fail as a matter of law .................9

        1.  HCDE did not violate Plaintiffs' Fourth Amendment rights .......................10

        2.  HCDE did not violate Plaintiffs' Equal Protection rights............................11

        3.  No official policy or custom of HCDE was the moving force behind any alleged deprivation of rights.................................................................................12

            a. The HCDE Board is its sole policymaker ...............................................13

            b. Plaintiffs have no evidence of any official policy or custom..................14

                i. HCDE official policy explicitly prohibits the alleged act..................14

                ii. No custom of HCDE allows the alleged act ....................................15

            c. No policy or custom was the moving force behind any alleged constitutional violation ................................................................................................15

    C.  Plaintiffs' Claims of Discrimination Fail as a Matter of Law ..........................16

PRAYER....................................................................................................................19

CERTIFICATE OF SERVICE ..................................................................................19

# TABLE OF AUTHORITIES

**Cases**

*A.N. v. Mart Indep. Sch. Dist.*,
    556 U.S. 662 (U.S. 2009) ................................................................ 16, 17

*Bd. of Cty. Comm'rs v. Brown*,
    520 U.S. 397, 404 (1997) ....................................................................... 15

*Bell v. Love*,
    923 S.W.2d 229 (Tex. App.—Houston [14th Dist.] 1996, no writ) ........................................... 9

*Brown v. Coulson*,
    463 F. Supp. 3d 762 (E.D. Tex. 2020) ....................................................... 17, 18

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986) ............................................................................... 2, 3

*City of Canton v. Harris*,
    489 U.S. 378 (1989) ................................................................................. 14

*City of Cleburne v. Cleburne Living Ctr.*,
    473 U.S. 432 (1985) ................................................................................. 11

*Cox v. Klug*,
    855 S.W.2d 276 (Tex. App.—Amarillo 1993, no writ) .......................................... 9

*D.A. ex rel. Latasha A. v. Hous. Indep. Sch. Dist.*,
    629 F.3d 450 (5th Cir. 2002) ................................................................ 16, 18

*Delano-Pyle v. Victora Cnty.*,
    302 F.3d 567 (5th Cir. 2002) ................................................................ 16, 17

*Doe v. Columbia-Brazoria Indep. Sch. Dist.*,
    855 F.3d 681 (5th Cir. 2017) .................................................................... 18

*Flores v. Sch. Bd. of DeSoto Parish*,
    116 F. App'x 504 (5th Cir. 2004) ....................................................... 10, 11, 12

*Gonzales v. Brown*,
    768 F. Supp. 581 (S.D. Tex. 1991) ............................................................... 9

*I.A. v. Seguin Indep. Sch. Dist.*,
    881 F. Supp. 2d 770 (W.D. Tex. 2012) ........................................................... 16

*Ingraham v. Wright*,
    430 U.S. 651 (1977) ............................................................................ 10

*Jett v. Dallas Indep. Sch. Dist.*,
    491 U.S. 701 (1989) ............................................................................ 13

*Jones v. Hous. Indep. Sch. Dist.*,
    979 F.2d 1004 (5th Cir. 1992) ............................................................. 8

*LeLeaux v. Hamshire-Fannatt Sch. Dist.*,
    835 S.W.2d 49 (Tex. 1992) ................................................................. 9

*Little v. Liquid Air Corp.*,
    37 F.3d 1069 (5th Cir. 1994) (*en banc*) ............................................. 3

*Mark V. v. N.E. Indep. Sch. Dist.*,
    455 F. Supp. 2d 577 (W.D. Tex. 2006) ............................................ 18

*Meadowbriar Home for Children, Inc. v. G.B. Gunn*,
    81 F.3d 521 (5th Cir. 1996) ............................................................... 12

*Melton v. Dallas Area Rapid Transit*,
    391 F.3d 669, 671-72 (5th Cir. 2004) ............................................... 16

*Monell v. Dep. of Soc. Servs.*,
    436 U.S. 658 (1978) ......................................................................... 12

*Nevills v. Mart Indep. Sch. Dist.*,
    608 F. App'x 217 (5th Cir. 2015) ..................................................... 17

*Pembaur v. City of Cincinnati*,
    475 U.S. 469 (1986) ......................................................................... 13

*Piotrowski v. City of Houston*,
    237 F.3d 567 (5th Cir. 2001 ................................................ 12, 13, 14

*Reyes v. Manor Indep. Sch. Dist.*,
    850 F.3d 251, 256-57 (5th Cir. 2017) .......................................... 18, 19

*Snyder v. Trapagnier*,
    142 F.3d 791 (5th Cir. 1998) ......................................................... 13, 14

*St. Louis v. Praprotnik*,
    485 U.S. 112 (1988) ......................................................................... 13

*Tooke v. City of Mexia*,
  197 S.W.3d 325 (Tex. 2006)...................................................................... 8

*Wallace v. Texas Tech Univ*,
  80 F.3d 1042 (5th Cir. 1996)...................................................................... 3

*Washington ex rel. J.W. v. Katy Indep. Sch. Dist.*,
  390 F. Supp. 3d 822 (S.D. Tex. 2019) ............................................... 11, 17

*Wilson v. City of Southlake*,
  936 F.3d 326 (5th Cir. 2019) .................................................................... 16

*Windham v. Harris Cty.*,
  875 F.3d 229, 236 n.8 (5th Cir. 2017) ...................................................... 18

**Statutes and Regulations**

34 C.F.R. § 300.507(a)............................................................................... 18

19 TAC § 89.1053(d).................................................................................... 7

19 TAC § 89.1053(j)..................................................................................... 7

19 TAC § 89.1115(c)................................................................................... 18

20 U.S.C. § 1400........................................................................................... 1

20 U.S.C. § 1415(f)..................................................................................... 18

29 U.S.C. § 794..................................................................................... 1, 16

42 U.S.C. § 1983.............................................................................. 1, 13, 14

42 U.S.C. § 12132............................................................................... 1, 16

Fed. R. Civ. P. 56(c) (LEXIS 2021) ............................................................. 2

RESTATEMENT (SECOND) OF TORTS § 147(2) (1965)............................... 10

Tex. Civ. Prac. & Rem. Code § 101.021 .................................................... 8

Tex. Civ. Prac. & Rem. Code § 101.025 .................................................... 8

Tex. Civ. Prac. & Rem. Code § 101.051 .................................................... 8

Tex. Civ. Prac. & Rem. Code § 101.057 ................................................. 8, 9

Tex. Civ. Prac. & Rem. Code § 101.106 ........................................................ 9, 10

Tex. Educ. Code § 11.151(b) ............................................................................ 13

Tex. Educ. Code § 11.151(d) ............................................................................ 13

Tex. Educ. Code § 37.0021(a) ............................................................................ 7

# I.    NATURE AND STAGE OF THE PROCEEDINGS

During all relevant periods, K.W. was eligible for special education and related services under the Individuals with Disabilities Education Act ("IDEA"). K.W. was enrolled at Harmony Public Schools ("HPS"), a system of open-enrollment charter schools organized under Chapter 12 of the Texas Education Code, for the 2017-2018 school year. K.W. attended the Harmony School of Ingenuity—Houston ("HSIH") until an HPS Admission, Review, and Dismissal ("ARD") committee placed him at Harris County Department of Education's ("HCDE") non-disciplinary specialized day program, Academic and Behavior School East ("ABS East"). On February 26, 2018, during K.W.'s first day at ABS East, K.W. was restrained after he became non-compliant and combative during his physical education class.

Plaintiffs filed a request for a due process hearing alleging violations of the Individuals with Disabilities Education Act, 20 U.S.C. § 1400 et seq. ("IDEA") and other laws against both HPS and HCDE. Specifically, Plaintiffs alleged HCDE failed to provide K.W. with a Free Appropriate Public Education ("FAPE") pursuant to its alleged obligations under the IDEA and also brought non-IDEA claims arising under Title II of the Americans with Disabilities Act, 42 U.S.C. § 12100 et seq. ("ADA"), Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 ("Section 504"), and the Civil Rights Act of 1871, 42 U.S.C. § 1983 ("Section 1983"). HCDE sought dismissal of all of Plaintiffs' claims, both IDEA and non-IDEA. The Independent Hearing Officer granted HCDE's Motion to Dismiss Plaintiff's non-IDEA claims for lack of subject matter jurisdiction. HPS was eventually dismissed following a settlement agreement with Plaintiffs, leaving HCDE as the sole party and only Plaintiffs' IDEA claims. HCDE subsequently filed a Supplemental Motion to Dismiss seeking dismissal of Plaintiffs' IDEA claims, which the Independent Hearing Officer granted.

Plaintiffs then filed the instant lawsuit against HCDE alleging tort violations, violations of Section 1983 for alleged deprivation of K.W.'s Fourth Amendment and Equal Protection rights under

the United States Constitution, and discrimination under the ADA and Section 504 as a result of the February 2018 restraint. HCDE moves for summary judgment on all Plaintiffs' claims against it.

## II.  STATEMENT OF ISSUES AND STANDARD OF REVIEW

### A.  Issues to be ruled on.

**Alleged tort violations:** HCDE, a governmental entity, is entitled to sovereign immunity for Plaintiffs' alleged tort violations.

**Alleged U.S. Constitution violations:** No state actor violated Plaintiffs' alleged constitutional rights. Moreover, HCDE is not liable in *respondeat superior*. In order to hold HCDE liable, Plaintiffs must identify both a (1) policymaker and (2) an official custom or policy of HCDE that was the moving force behind any alleged constitutional violation. Plaintiffs must prove that the HCDE Board of Trustees acted with deliberate indifference and actual causation in fact.

**Allegation of disability discrimination under Title II of ADA and Section 504 of the Rehabilitation Act:** HCDE would have taken the action against K.W. that forms the basis of this lawsuit without regard to his alleged disability. Plaintiffs must show that K.W. was a qualified individual within the meaning of the ADA, was discriminated against, and that such discrimination is by reason of his disability. Plaintiffs must also prove that HCDE refused to provide reasonable accommodations for K.W. and intentionally discriminated against him because of his disability.

### B.  Standard of Review

When there is no genuine issue about any material fact and the law entitles a party to judgment, summary judgment is appropriate. FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Rule 56 mandates summary judgment "after an adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.,* 477 U.S. at 322.

To survive summary judgment, Plaintiffs must identify specific facts in the record establishing a genuine issue for trial. *Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996). "This burden is not satisfied with 'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by only a 'scintilla of evidence.'" *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (*en banc*) (citations omitted). Failure on any essential element of a claim warrants summary judgment in favor of HCDE. *Celotex Corp.*, 477 U.S. at 322-23.

## III.    SUMMARY OF ARGUMENT

HCDE is entitled to summary judgment because no genuine issue of material fact exists as to Plaintiffs' claims against HCDE.

**Alleged tort violations:** Plaintiffs allege state law tort claims of assault and negligence. HCDE has sovereign immunity from any tort claims except those involving the negligent operation or use of a motor vehicle. Plaintiffs have made no allegations regarding any motor vehicles. Therefore, no cause of action exists against HCDE in tort, and HCDE is entitled to judgment as a matter of law on all Plaintiffs' tort claims.

**Violations of the U.S. Constitution:** HCDE, like other governmental entities, cannot be held liable on a theory of *respondeat superior*. To prevail on their Section 1983 action against HCDE, Plaintiffs must establish: (a) an HCDE state actor caused a deprivation of constitutional rights, and (b) an HCDE custom or policy or a final policymaker of HCDE was the moving force behind the deprivation. Plaintiffs' claims fail as a matter of law because they have no evidence of any deprivation of alleged constitutional rights – alleged violations of the Fourth Amendment or alleged violations of their Equal Protection rights. Additionally, Plaintiffs' claims fail because no custom or policy of HCDE's Board of Trustees was the moving force behind a deprivation of any constitutional right of Plaintiffs.

**Violations of Title II of the ADA and Section 504 of the Rehabilitation Act:** HCDE would have taken the action against K.W. that forms the basis of this lawsuit without regard to his alleged disability. Plaintiffs are unable to demonstrate that K.W. was discriminated against by HCDE as a result of his disability. Plaintiffs are further unable to demonstrate that HCDE intentionally discriminated against K.W. by failing to provide K.W. with a safe and non-hostile educational environment, creating a disparate impact under Section 504.

## IV.  FACTUAL BACKGROUND

This lawsuit concerns a single incident involving *one* physical education teacher at ABS East on *one* day of the 2017-2018 school year. Specifically, the lawsuit concerns a restraint of student K.W. by former physical education teacher Herbert Allen, Jr. ("Mr. Allen") on February 26, 2018 at ABS East, a contracted, non-disciplinary, specialized day program operated by HCDE.

1.  **K.W. had a history of discipline problems.**

During the 2017-2018 school year, K.W. was a ninth-grade student at HSIH. *See* Parker Affidavit attached as **Exhibit A** at pp. 1-38; *see also* Robertson Affidavit attached as **Exhibit B**; *see also* ARD Report attached as **Exhibit B-1**. During K.W.'s February 22, 2018 ARD committee meeting, it was agreed that K.W. would be placed at ABS-East. *Id*. at pp. 30-34; Ex. B-1 at ¶ 3. HCDE agreed to provide education related services for K.W. from February 26, 2018 to June 6, 2018. Ex. A at pp. 39-40. During K.W.'s ARD it was noted that he displayed, among other things, non-compliance with redirection, physical aggression (with peers, destruction of school property, and unwarranted touching of peers), verbal aggression (refusal to comply and inappropriate comments to peers and teachers), and behaviors of defiance. *See* Ex. A at p. 17; *see also* Ex. B at ¶ 3; *see also* Ex. B-1. It was also noted that K.W.'s behavior required immediate teacher attention and, at times, caused disruption to academic process in order to intervene with K.W.'s negative behaviors. *See* Ex.

A at p. 17; *see also* Ex. B-1. It was further noted that K.W. previously head-butted the HSIH Dean of Students during a restraint. *Id*.

## 2. The February 26, 2018 restraint.

In the afternoon of February 26, 2018, K.W. became verbally and physically non-compliant during PE class. *See* Ex. A at pp. 41-42; *see also* Ex. B at ¶ 4; *see also* Summary of Restraint attached as **Exhibit B-2**. Mr. Allen was present and noted K.W. refused to participate stating K.W. said that he wasn't "doing this. This is some bullshit!" *See* Ex. A at pp. 41-42; *see also* Ex. B-2. K.W. subsequently initiated a verbal altercation with another student. *Id*. The situation escalated into multiple students arguing. *Id*. Despite other students calming down, K.W. continued to use profanity. *Id*. K.W. told Mr. Allen that he "didn't give a fuck about being restrained because he had been restrained at his other school eight or more times." *Id*. After being given numerous directives to discontinue his inappropriate language, K.W. left the exercise line against instruction. *Id*. K.W. balled up his fist in a threatening manner at Mr. Allen and Mr. Allen then attempted – albeit against HCDE procedures – to administer a Crisis Intervention Institution Team Control Position restraint to K.W. *See* Exh. A at pp. 41-44; *see also* Statement of Harold Young attached as **Exhibit B-3**; *see also* Statement of Thomas Wilson attached as **Exhibit B-4**; *see also* Plaintiffs' Response to Request for Admissions No. 1. attached as **Exhibit C**.

K.W. became calm and compliant following the CPI restraint. *See* Ex. A at p. 42; *see also* Ex. B-2. K.W. was assessed by ABS East Nurse Karina Jerez ("Nurse Jerez") who noted that K.W. complained of pain in his left shoulder but had no redness or inflammation. *See* Ex. A at p. 45; *see also* Ex. B at ¶ 4; *see also* Nurse Assessment attached as **Exhibit B-5**. Nurse Jerez then communicated this information to K.W.'s mother. *See* Ex. A at p. 46; *see also* Ex. B at ¶ 4; *see also* Nurse Communication attached as **Exhibit B-6**. A conference was held in ABS East Principal Mindy Robertson's ("Principal Robertson") office with Assistant Principal George Sanders and K.W.'s

mother that same afternoon. *See* Ex. A at p. 47; *see also* Ex. B at ¶ 4; *see also* Principal Communication attached as **Exhibit B-7**. K.W.'s mother encouraged K.W. to follow class procedures and teacher directives. *See* Ex. A at p. 45; *see also* Ex. B-7. Following the incident, K.W. was placed on homebound services for the remainder of the 2017-2018 school year. *See* Ex. B. at ¶ 4; *see also* Homebound Services attached as **Exhibit D**. K.W. subsequently re-enrolled in HPS for the 2018-2019 school year and returned to ABS East to receive services in accordance with his Individualized Education Plan ("IEP"). *See* Ex. A at pp. 53-89. This lawsuit concerns the February 26, 2018 restraint of K.W. *See generally* Dkt. 3.

3.     **HCDE's investigation of the incident.**

On March 1, 2018, Principal Robertson investigated the February 26, 2018 restraint. *See* Ex. A at pp. 48-50; *see also* Ex. B at ¶ 5; *see also* Incident Report attached as **Exhibit B-8**. As part of her investigation, Robertson engaged in the following: (1) interviewed Mr. Allen and placed him on administrative leave pending the outcome of the investigation, (2) spoke with K.W.'s mother and aunt and provide them with the restraint report, (3) reviewed camera footage of the restraint, (4) interviewed educational aides, Harold Young and Thomas Wilson, who were present during the restraint, and (5) reported the incident to Child Protective Services ("CPS"). *Id*. Principal Robertson concluded that Mr. Allen did not follow HCDE's procedures in restraining K.W. and consequently, recommended that Mr. Allen's employment with HCDE be terminated. *See* Ex. A at pp. 49 & 51; *see also* Ex. B at ¶ 5; *see also* Termination Memo attached as **Exhibit B-9**. Mr. Allen's employment with HCDE was subsequently terminated. *See* Ex. A at p. 52; *see also* Ex. B at ¶ 5; *see also* Termination Letter attached as **Exhibit B-10.**

4.     **HCDE Policies and Procedures.**

HCDE Board Policy FOF (LEGAL) addresses student discipline for those students with disabilities. *See* Ex. A at pp. 90-99. HCDE's Behavior Management Techniques are implemented in

such a way as to protect the health and safety of the student and others. *Id*. at pp. 96-99. No discipline management practice of HCDE is calculated to inflict injury, cause harm, demean, or deprive the student of basic human necessities. *Id*. at p. 96; *see* Tex. Educ. Code § 37.0021(a); *see also* 19 TAC 89.1053(j). Per HCDE's Board Policy, a school employee may use a restraint in an emergency situation with reasonable force so as to protect the health and safety of students and others, must be discontinued when the emergency no longer exists, and must not deprive the student or others of basic human necessities. *Id*. at p. 98. An emergency involves a situation in which a student's behavior poses a threat of imminent, serious physical harm to the student or imminent, serious property destruction. *Id*. Restraint is defined as the use of physical force or a mechanical device to significantly restrict free movement of all or a portion of a student's body. *Id*. HCDE further prohibits educators from excluding a student from participation in a program, denying benefits to a student, or granting an advantage to a student on the basis of race, color, gender, *disability*, national origin, religion, family status, or sexual orientation. *See* Ex. A at p. 128 *(emphasis added)*.

The State of Texas mandates training on the use of restraint by school employees. *See* 19 TAC 89.1053(d). A core team of personnel on each campus must be trained in the use of restraint, and the team must include a campus administrator or designee and any general or special education personnel likely to use restraint. *See* 19 TAC 89.1053(d)(1). All staff members at HCDE campuses, including ABS East, receive annual training on physical restraint techniques as a student may be restrained as a last report. *See* Ex. A at p. 98.

At the time of the February 2018 incident, Mr. Allen was a licensed teacher in the State of Texas. *See* Ex. A at p. 208. Prior to the February 2018 incident, Mr. Allen was a teacher for HCDE since May 2017. *Id*. at 209-211. Prior to the February 2018 incident, Mr. Allen received approximately 31.4 hours of training while employed by HCDE, including 15 hours of training during the 2017-2018 school year. *Id*. at p. 212. All teachers within HCDE, including Mr. Allen, are

expected to comply with HCDE Board Policy at all times. *Id*. at p. 102. There is no doubt that HCDE prohibits its personnel from inappropriately restraining a student.

## V.    ARGUMENT AND AUTHORITIES

HCDE is entitled to summary judgment on all of Plaintiffs' claims against it.

**A.    HCDE has sovereign immunity for the alleged tort claim.**

Plaintiffs appear to allege HCDE is liable in tort for assault and negligence. *See* Dkt. 3 at p. 13, ¶ 42, p. 15, ¶¶ 47 & 50, p. 16, ¶ 54, p. 17, ¶ 54, and p. 20, ¶ 22. Because HCDE has sovereign immunity, HCDE is entitled to judgment as a matter of law. Under Texas law, a school district is liable in tort only to the extent that the State of Texas has waived its sovereign immunity. TEX. CIV. PRAC. & REM. CODE §§ 101.021, 101.025, 101.051, 101.057 (Texas Tort Claims Act). For a school district, liability is created only from negligence arising from the *operation or use of a motor vehicle*. *Id*. §§ 101.021, 101.051 (emphasis added). *There is no other waiver of a school district's immunity from tort claims*. *Id*. § 101.051, 101.057 (emphasis added). The Texas Tort Claims Act (TTCA) specifically does not waive sovereign immunity for intentional torts. *Jones v. Hous. Indep. Sch. Dist*., 979 F.2d 1004, 1007 (5th Cir. 1992) (holding school district immune from tort claim under the TTCA and Texas common law).

HCDE is a political subdivision and county school district organized under Texas law and retains government immunity from tort claim. *See Tooke v. City of Mexia*, 197 S.W.3d 325, 332 (Tex. 2006). Plaintiffs appear to allege state law tort claims against HCDE as a result of the February 26, 2018 incident. More specifically, K.W. references the February 26, 2018 incident as an assault (tort) and alleges that as a result, he experienced consequential issues, including physical and mental manifestations. *See* Dkt. 3 at p. 13, ¶ 42, p. 15, ¶¶ 47 & 50, p. 16, ¶ 54, and p. 17, ¶ 54. Additionally, K.W. also alleges that HCDE's failures were a gross deviation from professional standards of care (negligence or gross negligence). *See* Dkt. 3 at p. 20, ¶ 22.

K.W.'s assault claim against HCDE is an intentional tort that is expressly barred by Tex. Civ. P. & Rem. Code § 101.057(2). Additionally, because Plaintiffs make no allegation suggesting a claim arising from the operation or use of a motion vehicle, K.W.'s negligence claims against HCDE are also barred. *See LeLeaux v. Hamshire-Fannett Sch. Dist.*, 835 S.W.2d 49, 52 (Tex. 1992); *see also Gonzales v. Brown*, 768 F. Supp. 581, 584 (S.D. Tex. 1991) (immunity for assault). Therefore, HCDE is entitled to summary judgment on Plaintiffs' state tort claim.

Because summary judgment should be granted in favor of HCDE, it follows that the Court should also enter judgment in favor of Mr. Allen: "A judgment in an action or a settlement of a claim under [the chapter 'Governmental Liability for Tort Claims,'] bars any action involving the same subject matter by the claimant against the employee of the governmental unit whose act or omission gave rise to the claim." TEX. CIV. PRAC. & REM. CODE ANN. § 101.106; s*ee also Bell v. Love*, 923 S.W.2d 229, 233 (Tex. App.—Houston [14th Dist.] 1996, no writ) (holding that the court properly dismissed plaintiffs' claims brought against individual school employees for excessive discipline under TEX. CIV. PRAC. & REM. CODE § 101.106 after the court granted summary judgment in favor of school district; claims arose from same subject matter); *Cox v. Klug*, 855 S.W.2d 276, 280 (Tex. App.—Amarillo 1993, no writ) (summary judgment awarded to employee of government unit after summary judgment entered in favor of government unit).

Mr. Allen's alleged acts give rise to Plaintiffs' claims against HCDE. Therefore, once the Court grants HCDE summary judgment on the state tort law claims, the Plaintiffs' claims against Mr. Allen are statutorily barred. *See Bell*, 923 S.W.2d at 233 (holding that an action arises out the same subject matter if it arises out the same actions, transactions, or occurrences).

## B. Plaintiffs' claims under the U.S. Constitution fail as a matter of law.

Plaintiffs allege HCDE violated their Fourth Amendment rights and their rights to Equal Protection under the U.S. Constitution. *See* Dkt. 3 at p. 18, ¶¶ 60-67 and pp. 20-21, ¶¶ 81-86.

Plaintiffs have no evidence of any alleged constitutional violations, and HCDE is entitled to judgment as a matter of law on these claims. Moreover, summary judgment is appropriate for HCDE even if this Court decides that Plaintiffs have demonstrated they have sufficient evidence to get to a jury on all elements of their Fourth Amendment or Equal Protection claims because Plaintiffs cannot present any evidence that an official policy or custom of HCDE made by officials with final policymaking authority was the "moving force" behind the alleged constitutional violation.

1.    *HCDE did not violate Plaintiffs' Fourth Amendment rights.*

Plaintiffs allege HCDE's employee, Mr. Allen, violated K.W.'s rights pursuant to the Fourth Amendment due to unreasonable, unnecessary, and excessive force against K.W. as a result of a restraint. *See* Dkt. 3 at p. 18, ¶¶ 60-67. The Fifth Circuit has declined to recognize excessive force claims in educational disciplinary settings. *See Flores v. Sch. Bd. of DeSoto Parish*, 116 F. App'x 504 (5th Cir. 2004). In *Flores*, a special education student and his mother sued the school board for excessive force and unlawful seizure in violation of the Fourth Amendment after a teacher allegedly threw a student against a wall and choked him while threatening bodily harm. *Id*. at 506. The Fifth Circuit declined to recognize the Fourth Amendment claim reasoning that permitting students to bring excessive force claims under the Fourth Amendment would eviscerate the Circuit's rule against prohibiting substantive due process claims on the part of school children for excessive corporal punishment. *Id*. at 510. Preservation of order in schools allows for closer supervision and control of school children than would otherwise be permitted under the Fourth Amendment. *Id*.

The U.S. Supreme Court has noted that corporal punishment as force used by a teacher who reasonably believes to be necessary for a child's proper control, training, or education. *Ingraham v. Wright*, 430 U.S. 651, 661 (1977) (citing RESTATEMENT (SECOND) OF TORTS § 147(2) (1965)). HCDE's Student Discipline Board Policy permits use of force to maintain discipline to the degree the

administration or teacher believes the force is necessary, to further the purpose of education, and/or to maintain discipline in a group. *See* Ex. A at pp. 90-99.

No evidence of a violation of any alleged rights under the Fourth Amendment exists. Rather, it is undisputed that after being given numerous directives to discontinue inappropriate language, K.W., a student with a noted history of aggressive behavior, continued to be non-compliant, balled up his fist at Mr. Allen, and was ultimately restrained. *See Sec. IV, 1-2, above.* It is also undisputed that K.W. had a history of physical aggression and attacks against staff and students which also required him to be restrained in order to obtain compliance. *See* K.W. Discipline History attached as **Exhibit E**; *see also* Ex. A at p. 2. Following the single February 26, 2018 restraint, K.W. was calm and compliant. *See* Ex. A at p. 42. Accordingly, the restraint was applied, albeit incorrectly, in an attempt to preserve order in school. *See Id*. at pp. 90-99; *see also Flores*, 116 F. App'x at 510. There was no violation of Plaintiffs' Fourth Amendment rights.

2. *HCDE did not violate Plaintiffs' Equal Protection rights.*

Plaintiffs' Original Complaint-Amended failed to allege any facts that would suggest that any protected class which K.W. might belong actually motivated Mr. Allen's actions towards K.W. *See generally* Dkt. 3. The Equal Protection Clause provides that no State shall deny a person equal protection of the law – meaning all persons similarly situated should be treated alike. *City of Cleburne v. Cleburne Living Ctr*., 473 U.S. 432 (1985). "To state an equal-protection claim for a class of one, a plaintiff must allege that he or she has 'been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.'" *Washington ex rel. J.W. v. Katy Indep. Sch. Dist*., 390 F. Supp. 3d 822, 845 (S.D. Tex. 2019).

Plaintiffs allege that HCDE discriminated against K.W. when treating him in a disparate manner as compared to other students similarly situated (Dkt. 3 at p. 20, ¶ 86) yet fail to allege that the February 26, 2018 incident was motivated by animus based on K.W.'s status as a member of a

protected class. *See generally* Dkt. 3. Plaintiffs have not offered (and cannot) offer evidence demonstrating that a nondisabled student would not have been restrained, mainly because HCDE's ABS East Campus consists only of disabled students. *See* https://hcde-texas.org/schools/east/. Furthermore, Plaintiffs fail to name a single similarly situated comparator who was treated more favorably than K.W.

<blockquote>3.    *No official policy or custom of HCDE was the moving force behind any alleged deprivation of rights.*</blockquote>

Even if the Court finds that Plaintiffs have evidence that HCDE violated any alleged constitutional rights, Plaintiffs' constitutional claims nevertheless fail against HCDE because no official policy or custom of HCDE was the moving force behind any alleged deprivation of rights. Additionally, Plaintiffs have also pled away their own argument. Despite Plaintiffs' allegations that HCDE's policies, procedures, practices, and customs were unconstitutional and violated Plaintiffs constitutional rights, they also affirmatively pled in their Original Complaint-Amended that "HCDE *failed to have* policies, procedures, practices, and customs in place to protect K.W." (Dkt. 3 at p. 17, IX section header and ¶ 58 (emphasis added)) and that "the use of force sufficient to break K.W.'s collarbone was a gross misjudgment and *outside the realm of practices endorsed by HCDE*." Dkt. 3 at p. 12, ¶ 37 (emphasis added).

A local government entity, such as a school district can be liable under § 1983 *only* where its official policies are the "moving force [behind] the constitutional violation." *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 694 (1978). For a governmental entity like HCDE to be liable to a plaintiff under § 1983 based on the existence of an official custom or policy, the plaintiff must plead facts which show that: (1) a policy or custom existed; (2) the governmental policy makers actually or constructively knew of its existence, (3) a constitutional violation occurred, and (4) the custom or policy served as the moving force behind the violation." *Meadowbriar Home for Children, Inc. v. G.B. Gunn*, 81 F.3d 521, 532-33 (5th Cir. 1996). "[T]he unconstitutional conduct must be directly

attributable to the [governmental entity] through some sort of official action or imprimatur." *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001) (citing *Snyder v. Trepagnier*, 142 F.3d 791, 796 (5th Cir. 1998)). Significantly, "each and any policy which allegedly caused constitutional violations must be specifically identified by a plaintiff." *Id*. at 579.

a.    The HCDE Board is its sole policymaker.

A governmental entity's liability cannot be sustained under a theory of *respondeat superior*. *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 736 (1989). A plaintiff must point to more than actions by a governmental entity's employee. *Id.* Rather, a plaintiff must identify a policymaker with final policymaking authority. *Id.* Policymaking authority is the authority necessary to make final policy decisions. *St. Louis v. Praprotnik*, 485 U.S. 112, 127, (1988) (plurality opinion); *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481-84 (1986) (plurality opinion). An official can have decision making authority without final policymaking authority. *Praprotnik*, 485 U.S. at 127, 108 S. Ct. at 926; To hold otherwise would subject school districts to § 1983 liability on a *respondeat superior* theory. *See Praprotnik*, 485 U.S. at 126; *see also Piotrowski*, 237 F.3d at 578.

Only the actions of officials with final policymaking authority – HCDE's Board of Trustees in this case – can subject HCDE to liability under § 1983. *Jett*, 491 U.S. at 737; *Praprotnik*, 485 U.S. at 127-28; *Pembaur*, 475 U.S. at 483. HCDE's Board of Trustees ("the Board"), is its sole policymaker, as by law, the Board has the exclusive power to govern and oversee the management of the schools in the district.[1] Therefore, HCDE cannot be liable for the alleged acts of any individual employee, including Mr. Allen.

HCDE can only be liable for the acts of its sole policymaker – the HCDE Board of Trustees. Plaintiffs have no evidence that HCDE's Board was in any way involved or responsible for the

---

[1] TEX. EDUC. CODE § 11.151(b)("trustees …have the exclusive power and duty to govern and oversee the management of the public schools of the district") and § 11.151(d)("trustees may adopt rules and bylaws necessary to carry out the powers and duties provided by Subsection (b)."

alleged incident and have no evidence that the Board had any knowledge of the alleged incident. HCDE can be liable only if Plaintiffs can prove that the "execution of the [school district's] policy or custom…inflicts the injury" about which Plaintiffs complain. *City of Canton v. Harris*, 489 U.S. 378 (1989). Plaintiffs cannot and have not proved the same. Therefore, HCDE is entitled to summary judgment on Plaintiffs' § 1983 claims.

    b.  <u>Plaintiffs have no evidence of any official policy or custom.</u>

       i.  HCDE official policy explicitly prohibits the alleged act.

  The Fifth Circuit Court has held that official policy or custom means either: (1) "duly promulgated policy statements, ordinances or regulations"; or (2) "a persistent, widespread practice of [governmental entity] officials or employees which, although not authorized by officially adopted and promulgated policy, is so common and well-settled as to constitute a custom that fairly represents municipal policy…" *Piotrowski*, 237 F.3d at 579.

  Plaintiffs assert that their constitutional rights were violated because of Mr. Allen's restraint of K.W. *See generally* Dkt. 3. HCDE Board Policies, however, explicitly prohibited the kind of conduct Plaintiffs allege occurred. *See Section I, 4, above*. Specifically, HCDE Board Policy unambiguously limits restraints to the use of such reasonable force as is necessary to address an emergency that protects the health and safety of the student and others. *See* Ex. A at p. 98. HCDE's Employee Handbook, for the relevant period, requires employees to agree to abide by the standards, policies, and procedures defined in the handbook, including but not limited to, not intentionally, knowingly, or recklessly engage in physical mistreatment, neglect, or abuse of a student or minor. *Id*. at p. 128. Therefore, it is undisputed that no policy of HCDE caused the alleged deprivation of constitutional rights. *See Section I, 4, above.*

ii.     No custom of HCDE allows the alleged act.

Second, Plaintiffs have failed to and cannot establish the existence of any persistent, widespread practice of HCDE officials or employees which although not authorized by policy was so common and well-settled as to constitute policy. In fact, Plaintiffs admit that this lawsuit concerns one incident with one teacher – the opposite of a persistent, widespread practice. *See* Dkt. 3 at pp.13-16, ¶¶ 42-51. Further, Plaintiffs have no evidence that even if there were such a custom, which HCDE categorically denies, the Board was aware of the custom. The undisputed evidence shows that no custom existed to allow the kind of conduct which Plaintiffs allege occurred. *See Section I, 4, above*.

c.     No policy or custom was the moving force behind any alleged constitutional violation.

Even if a plaintiff can establish the essential elements of a policymaker and official policy or custom, the governmental entity is not liable unless the plaintiff shows a causal link that is the moving force between a policy or custom and the alleged constitutional deprivation. *Bd. of Cty. Comm'rs  v. Brown*, 520 U.S. 397, 404 (1997).

The United States Supreme Court has held:

> The plaintiff must also demonstrate that through its *deliberate* conduct, the [governmental entity] was the "moving force" behind the injury alleged. That is, a plaintiff must show that the municipal action taken was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action taken and the deprivation of federal rights.

*Id.*

The evidence conclusively demonstrates that HCDE's policy ensures that K.W.'s rights not be violated. HCDE Board Policies explicitly prohibit the kind of conduct Plaintiffs allege occurred. After a thorough, good-faith investigation, it was determined that Mr. Allen did not follow HCDE's procedures and his employment was subsequently terminated as a result. *See* Ex. A at pp. 48-50, & 51; *see also* Ex. B at ¶ 5; *see also* Ex. B-8; *see also* Ex. B-9. Therefore, Plaintiffs have no evidence

that any official policy or custom of HCDE's policymaker, the Board of Trustees was a moving force behind any of Plaintiffs' alleged constitutional violations.

## C.     Plaintiffs' Claims of Discrimination Fail as a Matter of Law

Plaintiffs alleges that HCDE's actions and omissions contributed to violating K.W.'s rights pursuant to Section 504 of the Rehabilitation Act and Title II of the ADA. *See* Dkt. 3 at pp. 18-20, ¶¶ 68-80 and p. 21, ¶¶ 87-95. Title II of the ADA and Section 504 both prohibit discrimination against qualified individuals with disabilities. *See* 42 U.S.C. § 12132 and 29 U.S.C. § 794. The evaluation of a claim for disability discrimination under the ADA and Section 504 are substantially the same with the material difference between the two provisions lying in their respective causation requirements. *See Wilson v. City of Southlake*, 936 F.3d 326, 329-30 (5th Cir. 2019). Under the ADA, the discrimination need not be the sole reason for an exclusion or denial of benefits; under Section 504, however, Plaintiffs must establish that disability discrimination was the sole reason for the exclusion or denial of benefits. *Id*.

To prove discrimination under Title II of the ADA, a plaintiff must show that: (1) he is a qualified individual under the Act; (2) that he was excluded from participation in or was denied benefits of, services, programs, or activities for which a public entity is responsible, o was otherwise being discriminated against by the public entity; and (3) such exclusion, denial of benefits, or discrimination was by reason of his disability. *Melton v. Dallas Area Rapid Transit*, 391 F.3d 669, 671-72 (5th Cir. 2004); see *I.A. v. Seguin Indep. Sch. Dist.*, 881 F. Supp. 2d 770, 776 (W.D. Tex. 2012). To recover damages, a plaintiff must prove that the discrimination was intentional. *Delano-Pyle v. Victoria Cty.*, 302 F.3d 567, 574 (5th Cir. 2002).

To prove discrimination under Section 504, a plaintiff is required to show that the defendants' discriminatory actions were "solely by reason of" the plaintiff's disability. 29 U.S.C. § 794; *see D.A. ex rel. Latasha A. v. Hous. Indep. Sch. Dist.*, 629 F.3d 450, 453 (5th Cir. 2002). A "plaintiff must link

the discrimination claims to some evidence of prejudice, ill-will, or spite," or, at the very least, show deliberate indifference. *Washington ex rel. J.W.*, 403 F. Supp. 3d at 622 (citing *A.N. v. Mart Indep. Sch. Dist.*, No. W-13-cv-002, 2013 U.S. Dist. LEXIS 191295, at *6 (W.D. Tex. Dec. 21, 2013), aff'd sub nom. *Nevills v. Mart Indep. Sch. Dist.*, 608 F. App'x 217 (5th Cir. 2015)). Accordingly, when the record is devoid of evidence of malice, ill-will, or efforts to impede a disabled student's progress, summary judgment must be granted in favor of the educational institution. *Delano-Pyle*, 302 F.3d at 574.

Plaintiffs' policy-related claims appear to fall into three categories: (1) intentional discrimination (Dkt. 3 at p. 20, ¶ 78); (2) disparate impact (Dkt. 3 at p. 20, ¶ 79); and (3) failure to make a reasonable accommodation (Dkt. 3 at pp. 18-19, ¶ 70). All of Plaintiffs' unsupported theories, attributed solely to the acts or omissions of HCDE, fail.

In an effort to prove intentional discrimination or deliberate indifference, Plaintiffs allege that HCDE (1) failed to keep K.W. safe, (2) failed to provide a non-hostile environment, and (3) failed to make a reasonable accommodation. *See* Dkt. 3 at p. 18-19, ¶¶ 70-75 and p. 20, ¶ 78. The first two allegations involve addressing whether HCDE had knowledge of the alleged failure and refused to correct it. *D.A.*, 629 F.3d at 454-55. Although harm ultimately befell K.W., there is no evidence that HCDE had knowledge of it and refused to correct it. In fact, the evidence demonstrates that following the February 26, 2018 restraint, HCDE investigated the matter, determined that Mr. Allen did not follow procedures in place to protect students' health and safety, and subsequently terminated Mr. Allen. *See Sec. IV, 3, above.* Accordingly, once HCDE learned of the failure, HCDE promptly responded and corrected it. *Id.* Furthermore, Plaintiffs provide zero evidence that had K.W. not been disabled, such fact would have changed K.W.'s interactions with Mr. Allen on February 26, 2018. *See Brown v. Coulson*, 463 F. Supp. 3d 762, 784 (E.D. Tex. 2020).

Regarding Plaintiffs' third allegation, in order to succeed in their failure to accommodate theory, Plaintiffs must point to evidence that HCDE refused to provide a reasonable accommodation for K.W. to receive full benefits of his school's program. *See Doe v. Columbia-Brazoria Indep. Sch. Dist.*, 855 F.3d 681, 690 (5th Cir. 2017) (citing *D.A.*, 629 F.3d at 454); *see also Windham v. Harris Cty.*, 875 F.3d 229, 236 n.8 (5th Cir. 2017). Here, Plaintiffs have failed to clearly articulate this claim, much less produce any evidence in support of the same. Plaintiffs never made a request for any accommodations to HCDE for K.W. and therefore, there is no accommodation for HCDE to have refused. Consequently, Plaintiffs' third allegation of failure to accommodate also fails. Plaintiffs alternatively allege that K.W. was a victim of disparate impact under Section 504 due to acts and omissions of HCDE. *See* Dkt. 3 at p. 20, ¶ 79. Plaintiffs disparate impact claim fails as none of HCDE's purported failures are alleged to have occurred "by reason of K.W.'s disability", which is a required element of both the ADA and Section 504. *See Brown*, 463 F. Supp. 3d at 782-83.

Furthermore, Plaintiffs cannot avoid the IDEA administrative exhaustion requirements by pleading an IDEA claim as a claim under Section 504. *See, e.g.*, *Mark V. v. N.E. Indep. Sch. Dist.*, 455 F. Supp. 2d 577, 592 (W.D. Tex. 2006). Plaintiffs could not have brought the same claim if the alleged conduct occurred at a public facility that was not a school and a non-student at the school could not have brought the same claim. *See Reyes v. Manor Indep. Sch. Dist.*, 850 F.3d 251, 256-57 (5th Cir. 2017). Additionally, the statute of limitations for an IDEA claim is one year. 10 TAC § 89.1115(c).[2] Plaintiffs affirmatively plead the incident occurred on February 26, 2018. *See* Dkt. 3 at pp. 13-14, ¶ 42. Plaintiffs did not, however, file this lawsuit until February 2020, which is more than a year after limitations expired. *See* Dkt. 1. Accordingly, HCDE contends that because Plaintiffs'

---

[2] Federal law sets a two-year statute of limitations for IDEA claims; however, a state may explicitly provide a shorter statute of limitations. 20 U.S.C. § 1415(f)(3)(C); 34 C.F.R. § 300.507(a)(2). If the state does so, the shorter time period prevails. *See id.*

Section 504 claim overlaps with an IDEA claim, and there was no timely exhaustion, it is therefore barred. *See Reyes*, 850 F.3d at 257.

## VI.    PRAYER

For these reasons stated above, HCDE respectfully requests that the Court grant HCDE's Motion for Summary Judgment and dismiss Plaintiff's lawsuit with prejudice. HCDE further requests that the Court grant it any further relief to which it is entitled.

Respectfully submitted,

KARCZEWSKI | BRADSHAW | SPALDING

J. ERIK NICHOLS
Attorney-in-Charge
State Bar No. 00788119
Federal I.D. 13066
enichols@kbslawgroup.com
MELISSA M. GOINS
State Bar No. 24074671
Federal I.D. 2089537
mgoins@kbslawgroup.com
3700 Buffalo Speedway, Suite 560
Houston, Texas 77098
Telephone: (713) 993-7041
Fax: (888) 726-8374

**ATTORNEYS FOR DEFENDANT HCDE**

**CERTIFICATE OF SERVICE**

I hereby certify that on this 1st day of March, 2021, a copy of the foregoing was served on all counsel of record via electronic mail and/or CMF/ECF addressed as follows:

Ms. Yvonnilda G. Muniz
Law Office of Yvonnilda G. Muniz
P.O. Box 92018
Austin, Texas 78709
ygmuniz@outlook.com

Counsel for Defendant HCDE