# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ETHLOKIA PLUMBER, ex rel., K.W. | § | |
| | § | |
| Plaintiffs, | § | |
| v. | § | CIVIL ACTION NO. 4:20-CV-00672 |
| | § | |
| HARRIS COUNTY DEPARTMENT | § | |
| OF EDUCATION, | § | |
| | § | |
| Defendant. | § | |

## DECLARATION OF JOHN HIPPE

I, John Hippe, hereby declare as follows:

1. I am the Director of Professional Development for Crisis Prevention Institute, also known as CPI. I have worked for CPI since 2001. I started as a trainer, and became a manager after approximately 10 years of training. As the Director of Professional Development, I oversee the onboarding and professional development for all of CPI's global professional instructors in North America.

2. CPI is a leader in evidence-based de-escalation and crisis prevention, and provides training to individuals in a variety of settings, including schools. I am very familiar with CPI's many training programs, including Nonviolent Crisis Intervention and Nonviolent Crisis Intervention with Advanced Physical Skills. I have taught both of these courses, as well as managed trainers who currently teach them.

3. CPI offers these courses as direct training to individuals, as well as part of a certification program for those who wish to become certified trainers in order to teach the courses to others in their organization.

1



4. Nonviolent Crisis Intervention, when taught as a direct training course in person, is a two-day course. It teaches skills to safely recognize and respond to every day crisis situations. The first part of the course covers the identification of early warning signs and stages of crisis, including measures to de-escalate crisis situations. Communication skills and nonphysical approaches to prevent or reduce the likelihood of aggressive behavior are taught.

5. Additionally, physical intervention techniques are taught, to include disengagement and holds. The focus is teaching the minimal amount of force in the least restrictive hold for the safety of both the person doing the restraint and the person being restrained. The emergency floor procedure is not taught in this course.

6. The risks related to holds are also taught. Attached as Exhibit A is Understanding the Risks of Restraint, which was included in earlier versions of the Applied Physical Training's workbook and instructor's manual for Nonviolent Crisis Intervention. CPI teaches that in addition to the psychological danger of using restraints, there are physical dangers. Additionally, CPI teaches that some restraints are more dangerous than others, and this document addresses the dangers relating to facedown floor restraints, which can lead to difficulty breathing.

7. The last focus of Nonviolent Crisis Intervention is what occurs after an intervention, to include recording the incident and reestablishing a positive and productive relationship with the individuals involved.

8. A higher-level course is Nonviolent Crisis Intervention with Advanced Physical Skills. In addition to what is taught in the first course, this course teaches more advanced holds for higher risk situations. Previously, this course was called Applied Physical Training.

2



9. In this course the emergency floor procedure is taught. This procedure is used when the person being restrained moves to the floor; at this time the individuals doing the hold must decide how to best protect the individual in crisis.

10. The Nonviolent Crisis Intervention with Advanced Physical Skills course does not and has never taught any hold that involves the person doing the restraint initiating moving the person in crisis to the floor. CPI's philosophy is to manage the person in crisis in his or her current position as this is typically safest for both the people performing the hold and the person in crisis. CPI teaches that there are risks associated with a move to the floor, to include injuries from the impact with the floor, as well as increased risk of asphyxiation.

11. CPI does not teach any hold that is labeled as a "baskethold."

12. CPI teaches that physical intervention is to be used as a last resort when all other options have been exhausted. CPI does not train that restraints should be used for behavior compliance. The intent of the Nonviolent Intervention Process is to bring an individual out of crisis.

13. To become a CPI certified trainer, an individual must attend the course plus two additional days to learn how to train others. To be certified to teach Nonviolent Crisis Intervention requires four days; to be certified in Nonviolent Crisis Intervention with Advanced Physical Skills requires five days when done in person. Additionally, trainers are required to attend a renewal training by CPI every two years to maintain their status as certified trainers.

14. Trainers who have not attended the Nonviolent Crisis Intervention with Advanced Physical Skills trainer certification program are not certified to teach the more advanced holds taught in this course, to include the emergency floor restraint.



15. CPI provides guidelines for the length of trainings given by CPI certified trainers. Nonviolent Crisis Intervention is to be 13 hours of training, and Nonviolent Crisis Intervention with Advance Physical Skills is to be 19 hours of training.

I swear under the penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my knowledge.

Dated this ___ day of June 2021, at Milwaukee, Wisconsin.

John Hippe

4



# nonviolent crisis intervention
a CPI specialized offering



Understanding the Risks of Restraints

HCDE 02641

## Understanding the Risks of Restraints

The *Nonviolent Crisis Intervention®* training program focuses on crisis prevention and the creation of restraint-free environments through a commitment to *Care, Welfare, Safety, and Security*SM. While considered a last resort, physical intervention procedures are taught as part of the program to provide staff with skills and confidence to safely manage emergency situations.

Any physical intervention should be used only when all other options have been exhausted and when an individual is a danger to self or others. Even in those moments, an assessment is still necessary to determine the best course of action to maintain the *Care, Welfare, Safety, and Security*SM of all.

There may be times when other strategies, such as continuing verbal intervention, removing dangerous objects, using *Personal Safety Techniques*SM, and calling for further assistance would precede and possibly prevent any physical intervention.

Remember that there are risks involved in any physical intervention. Therefore, physical interventions should be considered only when the danger presented by the acting-out individual outweighs the risks of physical intervention. Specific laws or regulations may govern use of restraints. Be sure to check your facility's policies and procedures for applicable rules.

## Dangers of Restraints

The events leading up to a crisis situation and the struggling that occurs during a restraint can result in a lot of stress for the individual being restrained. This negative stress is sometimes called distress. Consequently, it is not unusual for a restrained individual to show signs of distress, both physically and emotionally.

Always keep in mind that the acting-out person might have health problems. Therefore, everyone being restrained should be considered at risk. It is also important to understand that in some cases, restrained individuals have gone from a state of no distress to death in a matter of moments. Policies and procedures should reflect how staff can monitor these signs of distress and identify what protocol should be followed.

There is also a psychological danger in using restraints. Being restrained can be a frightening— even traumatic—experience. Restraints can interfere with the relationship between caregivers and the person being restrained. In fact, if people are restrained too often, they may begin to feel that they have no control over their lives.

*For these reasons and others, restraints should be used only when a person's behavior is MORE dangerous than the danger of using restraints.*

Some restraints are more dangerous than others. For example, facedown (prone) floor restraints and positions in which a person is bent over in such a way that it is difficult to breathe are extremely dangerous. This includes a seated or kneeling position in which the person being restrained is bent over at the waist and any facedown position on a bed or mat.

*Restraint-related positional asphyxia* occurs when the person being restrained is placed in a position in which he cannot breathe properly and is not able to take in enough oxygen. Death can result from this lack of oxygen and consequent disturbance in the rhythm of the heart.

Staff members must be especially careful not to use their own bodies in ways that restrict the restrained person's ability to breathe. This includes sitting or lying across a person's back or stomach. When someone is lying facedown, even pressure to the arms and legs can impact that person's ability to breathe effectively.

HCDE 02642

# Examples of High-Risk Positions for *Restraint-Related Positional Asphyxia*



Illustrations based on information from various individuals and resources. See Resources and References on page 32.

All of these positions may interfere with a person's ability to breathe. While they are different, these positions share a common factor: When forcefully maintained, each of them could prevent the diaphragm (the largest muscle of respiration) from working. If the diaphragm is not allowed to move down into the abdomen, breathing is seriously restricted. In fact, when a forcefully maintained position hinders both chest and abdomen movement—the result can be fatal.

When confronted with an emergency situation, always consider the option of disengaging. If the person is not a danger to self or others while on the floor, staff may make the decision to move away and give a clear directive.

HCDE 02643

# Reducing the Risks of Restraints

There are ways to minimize risks involved in any physical intervention. The very best way to avoid injury is to avoid the need to restrain in the first place. Get to know the people in your care. Be aware of changes in their behavior that can be warning signs of anxiety. Intervene early. Learn to set limits effectively. Avoid being drawn into power struggles. Work as hard at learning verbal intervention skills as you do at learning physical intervention skills. Treat everyone with dignity and respect.

Staff members should be trained in and regularly practice safer ways of restraining. The physical intervention procedures taught in the *Nonviolent Crisis Intervention*® training program are designed to maximize safety and offer a safer alternative to techniques that involve the floor to restrain an individual. A physical restraint is an emergency procedure comparable to CPR or first aid. As with any emergency response procedure, staff members need to practice these skills on a regular basis.

Educate yourself and others on the risks and dangers of using restraints. Some restraints are more dangerous than others. By choosing safer restraint techniques, you and your facility can reduce the possibility of serious injury and even death. In particular, you should avoid positions that can lead to *restraint-related positional asphyxia*.

CPI's *Nonviolent Physical Crisis Intervention*℠ techniques are designed for safety and allow for a Therapeutic Rapport to be re-established with the individual who has lost control. Key elements of *Nonviolent Physical Crisis Intervention*℠ responses include:

- No element of pain is involved.
- The intent is to calm the individual.
- The individual is not restrained on the floor, thus reducing risks of *restraint-related positional asphyxia* and other injuries.
- Team interventions are used when necessary.
- *Nonviolent Physical Crisis Intervention*℠ is used only as a last resort when someone presents a danger.
- *Nonviolent Physical Crisis Intervention*℠ is used to protect—not to punish.

The goal is for staff to continually assess for signs of Tension Reduction and identify opportunities to re-establish a Therapeutic Rapport with the individual.

Remember, the best way to eliminate the dangers of restraints—to you and to those in your care—is to eliminate the need for restraints at all.

HCDE 02644

# Glossary of CPI Terms

**Acting-Out Person**—the total loss of control, which results in a physical acting-out episode. It is the third level in the CPI *Crisis Development Model*℠. Individuals in this level are presenting a danger to themselves or others.

**Anxiety**—a noticeable increase or change in behavior. A nondirected expenditure of energy; e.g., pacing, finger drumming, wringing of the hands, or staring. It is the first level in the CPI *Crisis Development Model*℠.

**Challenge Position**—a body position in which one individual is face-to-face, toe-to-toe, and eye-to-eye in relation to another individual. This position is often perceived as a challenge and tends to escalate a crisis situation.

**CPI Classroom Model**—a standardized way of demonstrating personal safety and *Nonviolent Physical Crisis Intervention*℠ methods in order to show the application of basic principles.

**CPI *COPING Model*℠**—a model that staff members can use to guide them through the process of establishing Therapeutic Rapport with an individual after a crisis incident. The CPI *COPING Model*℠ can also be used as a way to structure a staff debriefing.

**CPI *Crisis Development Model*℠**—a series of recognizable behavior levels an individual may go through in a crisis, and corresponding Staff Attitudes/Approaches used for crisis intervention.

**Defensive Level**—the beginning stage of loss of rationality. At this stage, an individual often becomes belligerent and challenges authority. It is the second level in the CPI *Crisis Development Model*℠.

**Directive Staff Attitude/Approach**—an approach in which a staff member takes control of a potentially escalating situation by setting limits. It is the recommended Staff Attitude/Approach to an individual at the Defensive level.

**Empathic Listening**—an active process to discern what a person is saying.

**Integrated Experience**—the concept that behaviors and attitudes of staff impact behaviors and attitudes of individuals, and vice versa.

**Kinesics**—the nonverbal message transmitted by the motion and posture of the body.

**Limit Setting**—a verbal intervention technique in which a person is offered choices and consequences. Limits should be clear, simple, reasonable, and enforceable.

**Nonviolent Crisis Intervention**ˣ **Program**—a safe, nonharmful behavior management system designed to aid staff members in maintaining the best possible *Care, Welfare, Safety, and Security*℠ for agitated or out-of-control individuals even during their most violent moments.

**Nonviolent Physical Crisis Intervention**℠—used only as a last resort when a person is a danger to self or others. This involves the use of safe, nonharmful control and restraint positions to safely control an individual until he can regain control of his behavior.

**Paraverbal Communication**—the vocal part of speech, excluding the actual words one uses. Three key components are tone, volume, and cadence of speech.

**Precipitating Factors**—the internal or external causes of an acting-out behavior over which a staff member has little or no control.

**Proxemics**—personal space. An area surrounding the body, approximately 1.5 to three feet in length, which is considered an extension of self.

**Rational Detachment**—the ability to stay in control of one's own behavior and not take acting-out behavior personally.

**Supportive Staff Attitude/Approach**—an empathic, nonjudgmental approach attempting to alleviate anxiety. It is the recommended Staff Attitude/Approach to an individual at the Anxiety level.

**CPI *Supportive Stance*℠**—the suggested body position for a staff member to maintain when intervening with a potentially out-of-control or acting-out individual. The CPI *Supportive Stance*℠ is maintained by keeping a distance of one leg-length from the person and by remaining at an angle.

**Tension Reduction**—a decrease in physical and emotional energy that occurs after a person has acted out, characterized by the regaining of rationality. It is the fourth level in the CPI *Crisis Development Model*℠.

**Therapeutic Rapport**—an approach used to re-establish communication with an individual who is experiencing Tension Reduction.

**Training Process**—a format for identifying ongoing learning opportunities to ensure training concepts expand upon course content through practical application. In addition to initial training, components include Formal Refreshers, Reviews, Policy Discussions, Practice, Situational Applications, and Rehearsals/Drills.

**CPI *Verbal Escalation Continuum*℠**—a model demonstrating a variety of defensive behaviors that are often seen when individuals are in the Defensive level of the CPI *Crisis Development Model*℠. This model includes suggested staff interventions for each behavior.

HCDE 02645

© 2007 CPI (reprinted 2011).

31

# Resources and References

CPI. (2006). *Instructor manual for the* Nonviolent Crisis Intervention® *training program.* Milwaukee, WI: Author.

Lee, S., Wright, S., et al. (2001). Physical restraint training for nurses in English and Welsh psychiatric intensive care and regional secure units. *Journal of Mental Health* 10(151).

Miller, C. D. (2002). *Silent killer: Death by restraint.* Milwaukee, WI: CPI.

O'Halloran, R. L., & Frank, J. G. (2000). Asphyxial death during prone restraint. *American Journal of Forensic Medicine and Pathology, 21*(1), 39–52.

Patterson, B., Leadbetter, D., & McComish, A. (1998). Restraint and sudden death from asphyxia. *Nursing Times, 94*(44).

Pollanen, M., Chiasson, D., Cairns, J., & Young, J. (1998). Unexpected death related to restraint for excited delirium: A retrospective study of deaths in police custody and in the community. *Canadian Medical Association Journal, 158*(12).

Reak, K. (1996, June). Cocaine, restraints and sudden death. *The Police Chief.*

Reay, D. (1996, May). Suspect restraint and sudden death. *FBI Law Enforcement Bulletin.*

Weiss, E. M. (1998, October 11–15). Deadly restraint: A nationwide pattern of death. *Hartford Courant.*

Wright, S. (1999). Physical restraint in the management of violence and aggression in in-patient settings: A review of issues. *Journal of Mental Health, 8*(5).

HCDE 02646